Michael W. GIBBS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 982S376.

Supreme Court of Indiana.

March 12, 1984.

Rehearing Denied May 25, 1984.

Ralph Ogden, J. William DuMond, Wilcox, Ogden & DuMond, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, the Defendant (Appellant) was convicted of Robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1979) and sentenced to forty (40) years imprisonment. His direct appeal presents six (6) issues for review:

1. Whether the trial court erred in denying Defendant's request to question the jurors to determine whether any of them had seen him wearing handcuffs while being transported to the courtroom;

2. Whether the trial court erred when it did not declare a mistrial, *sua sponte,* upon a juror's discovery of a foreign substance in the lining of a jacket, State's Exhibit No. 2, allegedly worn by the Defendant on the night of the crime;

3. Whether the evidence was sufficient to sustain the verdict;

4. Whether the trial court erred in permitting the State to amend the information;

5. Whether the trial court abused its discretion in enhancing the presumptive sentence by ten (10) years;

6. Whether the Defendant was denied the effective assistance of counsel.

## ISSUE I

On the second day of trial, Defendant maintained that while being transported to the courtroom he had been seen wearing handcuffs by at least one juror, and the court then instructed that, thereafter, the Defendant not be escorted in handcuffs in the presence of the jury. At the close of the State's case-in-chief, the Defendant moved for a mistrial on the ground that he had again been seen, in handcuffs, by several jurors while being escorted to the courtroom. A hearing was held on that motion, and the Defendant testified that he had been handcuffed with his hands behind his back and that, when he got out of an automobile and approached the courthouse, two or three (2 or 3) jurors saw him. The attending officer, however, testified that there was "no way" the jurors could have seen the Defendant at that time because they were too far away and because he had stepped between them and the Defendant.

The court overruled the mistrial motion and decided not to question the jurors, reasoning that "it would merely emphasize to the detriment of the defendant the fact that he may have been transported in handcuffs."

Beginning with *Jessup v. State,* (1971) 256 Ind. 409, 269 N.E.2d 374, we have held on several occasions that being seen by jurors while being transported in handcuffs is not grounds for reversal. In *Johnson v. State,* (1977) 267 Ind. 256, 369 N.E.2d 623, *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791, we reasoned:

> "In the case at bar the appellant was charged with first degree murder. A reasonable jury could expect him to be in police custody. We fail to see how he was harmed by being seen in handcuffs. The trial court did not commit error in refusing to grant a mistrial for that reason."

*Id.* at 259, 369 N.E.2d at 625. *See also Osborne v. State,* (1981) 426 N.E.2d 20, 22; *Misenheimer v. State,* (1978) 268 Ind. 274, 374 N.E.2d 523, *rehearing denied.*

Defendant argues that it was reversible error for the trial court to deny him the opportunity to question the jurors for the purpose of determining if any of them had actually seen the Defendant in handcuffs and, if so, to determine if they had been, in any way, prejudiced by that observation. However, we see no abuse of discretion in the court's ruling. The trial court noted:

> "I do note that during the voir dire Harold Smith, one of the jurors, has already stated that he visited the defendant in

jail and obviously knows that he is or has been in custody, and it's not unreasonable to think that the jurors might infer if they gave the matter any consideration that he would be transported back and forth from the jail and that he probably would be in the custody of the sheriff and that adequate precautions might be taken including handcuffing, so I think there's less prejudice to your client by not questioning the jurors at this point than there is by questioning them and emphasizing to them the fact if it turned out they said 'no, we never saw him in handcuffs,' we have certainly planted a seed in their mind concerning that, and I'm inclined at this point to overrule your motion and proceed with the argument and instructions of the jury."

## ISSUE II

■ A khaki jacket, allegedly worn by the Defendant at the time the crime was committed, was admitted into evidence without objection. During a recess it was examined by the jury, and one of the jurors discovered a plastic bag containing a "foreign substance" in its lining. Defendant argues that he was prejudiced because the jury was exposed to evidence of another unrelated crime, i.e. possession of a controlled substance, and the trial court should have, *sua sponte*, declared a mistrial. No motion for admonishment or mistrial was made during the course of the trial; hence Defendant cannot now complain of error. *Akins v. State*, (Ind.1981) 429 N.E.2d 232, 236. Further, there is nothing in the record to substantiate Defendant's claim that the foreign substance was, in fact, marijuana.

## ISSUE III

■ At the outset we note our standard of review for sufficiency of the evidence:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ The evidence most favorable to the State disclosed that on January 29, 1982, at approximately 9:30 or 9:45 p.m., the Defendant, wearing a "knitted black sock cap" which concealed his face, approached Milford Hutsell's house trailer. When Hutsell asked who it was, the person told him to "let him in." Hutsell testified that he recognized the Defendant's voice from previous conversations with him. When Hutsell opened the door, he was struck repeatedly in the head and knocked down. The Defendant demanded and took $240.00 from him. Defendant then left with Jimmy Lovvorn and went to Lafayette. Lovvorn testified that during the drive to Lafayette, the Defendant told him that he had robbed and hit Hutsell. Defendant also changed clothes and threw those he had been wearing out the window of the automobile. Lovvorn, accompanied by police officers, later found the Defendant's shirt and shoes near the location where he recalled they had been discarded by the Defendant.

The Defendant argues that the testimony of the victim, Milford Hutsell, and of Jimmy Lovvorn, to whom the Defendant had made the incriminating statement, was inherently incredible and that no reasonable juror could have believed it. He characterizes Hutsell as both gullible and paranoid. Further, he argues that Hutsell had met the Defendant on only two prior occasions, each when the Defendant had attempted to borrow money. Thus, he argues, the identification of the Defendant as his assailant "is so improbable that no reasonable juror could believe it." The victim's identification of the Defendant, however, was unequivocal. In *Lottie v. State*, (1974) 262 Ind. 124, 311 N.E.2d 800, upon which the

Defendant relies, the victim's identification was both equivocal and qualified.

With respect to Lovvorn's testimony, the Defendant argues that it was inherently incredible because it was tainted by police coercion. Police officers did encourage Lovvorn to divulge all of the information he possessed and informed him that potentially he could be charged as an accomplice. However, there is nothing to indicate that his in-court testimony was the product of sustained pressure and coercion by law enforcement officials, nor was his testimony "vacillating, contradictory and uncertain." Thus, this case is distinguishable from *Gaddis v. State*, (1969) 253 Ind. 73, 79, 251 N.E.2d 658, 663, upon which Defendant also relies.

We hold that the evidence is sufficient to support the jury finding that Defendant was the perpetrator of the crime.

### ISSUE IV

The initial information charged the Defendant, in pertinent part, as follows:

"Michael W. Gibbs did knowingly, by using force on Milford Hutsell, to-wit: by striking with nunchucks, a martial arts weapon consisting of two wooden sticks connected by a rope, take property, to-wit: money from the person of Milford Hutsell and in doing so did inflict bodily injury upon Milford Hutsell."

Following the presentation of evidence, the trial court granted the prosecution's motion to amend the information by substituting the words "with an inanimate object" for the reference to nunchucks.

■ Upon motion of the prosecutor, the court may permit an amendment to an information at any time with respect to any defect, imperfection or omission in form which does not prejudice the substantial rights of the Defendant. Ind.Code § 35–3.-1–1–5(c). However, the information may not be amended to change the theory of the case or the identity of the offense charged. Ind.Code § 35–3.1–1–5(e). Defendant argues that the amendment substantially changed the theory of the State's case, violating subsection (e) of the statute and

that his substantial rights were prejudiced. We do not agree.

■ If the defense under the original information would be equally available after the amendment is made and the accused's evidence would be equally applicable to the information in one form as in the other, the amendment is one of form and not one of substance. Further, an amendment is of substance only if it is essential to the making of a valid charge of the crime. *Owens v. State*, (1975) 263 Ind. 487, 497, 333 N.E.2d 745, 750.

■ In the case at bar, the theory of the case is the same under the information in either form. Under both it is alleged that Hutsell was the victim of a robbery and suffered bodily injury as a result of being struck during the commission of that robbery. The amendment did not in any way change the fact that the Defendant was charged with robbery, a class A felony. Hence, the change from "nunchucks" to "inanimate object" is not a change in the identity of the offense.

After granting the motion to amend the information, the court asked the Defendant if he wished additional time to prepare his defense in response to the amendment. The Defendant declined. In addition, he did not allege any defense which he had intended to use in response to the initial information that he could not use, with equal effect, in response to the amended version. The Defendant had an adequate time to prepare his defense and has not shown that his substantial rights were prejudiced. *Pavone v. State*, (1980) Ind., 402 N.E.2d 976, 978.

■ We also find no merit to Defendant's contention that evidence of his interest in nunchucks was an evidentiary harpoon necessitating a mistrial. He claims that although the State's evidence was true, it made him appear to be an extremely violent person. Defendant, however, did not move for a mistrial predicated upon this ground, and neither do we find his argument persuasive.

## ISSUE V

 Defendant argues that the trial court abused its sentencing discretion in that it failed to consider his alleged remorse as a mitigating circumstance. In support of such argument, he cites only that a local clergyman testified that he had counseled with Defendant, subsequent to his commission of the crime, and that, in his opinion, he was remorseful. Although this testimony was not directly contradicted, the court was not bound to accept it as a correct assessment of Defendant's mental state, and it cannot be said that the court failed to consider the testimony merely because it failed to give full effect to its intendment. The court, on sufficient evidence, enumerated several aggravating circumstances, among them being: that Defendant had a history of criminal activity and was on probation at the time he committed the crime; that the crime had been premeditated; that there was considerable disparity in the ages and physical abilities of Defendant and the victim; and that the crime was committed with a deadly weapon and with apparent indifference with respect to the likelihood of death or permanent injury to the victim. We find no abuse of discretion in the court's enhancement of the thirty-year presumptive sentence by ten additional years.

## ISSUE VI

Finally, Defendant argues that he was denied the effective assistance of counsel as evidenced by his attorney's inaction when a juror found a "foreign substance" in the lining of a jacket allegedly worn by Defendant on the night of the crime. (See Issue II). He complains that his attorney did not object, did not examine the substance, had no description of it placed in the record, did not seek to have it identified, made no attempt to question the jurors, and did not request an admonishment to the jury. He contends that these oversights, coupled with counsel's failure to object to the victim's testimony that the Defendant had borrowed money from him to purchase drugs and had used nunchucks to kill other people, constituted inadequate representation by his trial counsel.

 When incompetency of counsel is alleged, there is a presumption that counsel is competent. Strong and convincing proof is necessary to overcome this presumption which may be done only by showing that the attorney's action or inaction reduced the proceedings to "a mockery of justice," shocking the conscience of the court. *Brown v. State*, (1983) Ind., 443 N.E.2d 316, 319; *Lenoir v. State*, (1977) 267 Ind. 212, 214, 368 N.E.2d 1356, 1357. One example of poor strategy, carelessness, or inexperience does not necessarily constitute ineffective counsel. *Lindley v. State*, (1981) Ind., 426 N.E.2d 398, 401. The record discloses that counsel's performance as a whole was adequate, and Defendant has failed to demonstrate how he was prejudiced by counsel's trial tactics. *See Smith v. State*, (1979) 272 Ind. 216, 218, 396 N.E.2d 898, 900.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.