Steven SHARP, Appellant,

v.

STATE of Indiana, Appellee.

No. 34S00–8802–CR–211.

Supreme Court of Indiana.

Feb. 28, 1989.

Steven C. Litz, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., and John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Count I Dealing in a Schedule I, II, or III Controlled Substance, a Class B felony, for which he received a sentence of ten (10) years; Count II Maintaining a Common Nuisance, a Class D felony, for which he received a sentence of two (2) years; Count III Dealing in a Schedule I, II, or III Controlled Substance, a Class B felony, for which he received a sentence of ten (10) years; Count IV Dealing in a Schedule I, II, or III Controlled Substance, a Class B felony, for which he received a sentence of ten (10) years; Count V Dealing in a Schedule I, II, or III Controlled Substance, a Class B felony, for which he received a sentence of ten (10) years; and Count VI Dealing in a Schedule I, II, or III Controlled Substance, a Class B felony, for which he received a sentence of ten (10) years. Counts I, III, and V are to be served consecutively, and Counts II, IV, and VI are to be served concurrently with Counts I, III, and V.

The facts are: Anthony Tolleson made an agreement with the Kokomo Police Department to be an informant and cooperate in the purchase of drugs from appellant. On November 7, 1985, Tolleson called appellant from the Kokomo Police Department, and police recorded the call. During the call, Tolleson made arrangements with appellant to purchase ten tablets of Demerol and ten tablets of Percodan from him. Police equipped Tolleson with a body transmitter and gave him $80. While Tolleson was under police surveillance, he drove to

appellant's home, purchased the drugs, and returned to the police department.

On December 6, 1985, police recorded a telephone conversation between Tolleson and appellant in which appellant agreed to sell thirty tablets of Fiorinal and Tylenol with Codeine to Tolleson. Under police surveillance, Tolleson purchased the drugs and returned to the police station.

On January 21, 1986, Tolleson called appellant from the police department and arranged to buy ten tablets of Demerol. While under police surveillance, Tolleson purchased the drugs from appellant. As Tolleson exited appellant's residence, he was met by four police officers. Police arrested appellant, and he signed a consent to search form. Appellant had the buy money from the sale of the Demerol in his pockets.

Appellant argues the admission of the tape-recorded conversations into evidence deprived him of his Sixth Amendment right of confrontation.

■ Before appellant's trial began, Tolleson was murdered. The trial court admitted into evidence the three tape recordings of the telephone conversations between Tolleson and appellant arranging the drug buys and the three tape recordings of their conversations during the buys. Appellant argues the tapes were hearsay and their admission deprived him of his right to face and cross-examine his accuser. He concludes that the evidence is insufficient to sustain his convictions because no evidence existed to establish that it was his voice speaking with Tolleson on the tapes.

On a claim involving the insufficiency of evidence, this Court will not reweigh the evidence or judge the credibility of the witnesses. *Collins v. State* (1988), Ind., 521 N.E.2d 682.

Four police officers testified that Tolleson came to the police station and made three calls to appellant's telephone number and arranged to buy drugs from the person to whom he spoke, and he drove to appellant's house and purchased drugs from a male in appellant's home.

Appellant's cousin testified that he knew Tolleson, appellant, and appellant's family well. He stated that the voices on the tapes were those of appellant's son, ex-wife, appellant, and Tolleson. The persons making the drug transactions were appellant and Tolleson.

Appellant argues the tapes should not have been admitted because the standard set forth in *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795 was not met. *Lamar* is not applicable to the case at bar. The standards set forth there are applicable to a custodial confession. In the case at bar, the tapes are conversations between appellant and Tolleson arranging the sales in question.

■ The hearsay rule was not intended to protect a party from having to face and perhaps explain their own out-of-court statements. *Jethroe v. State* (1974), 262 Ind. 505, 319 N.E.2d 133. Half the statements made during these several telephone conversations were those of appellant. The remaining statements were those of the informant, and appellant was experiencing them and responding to them. The content of those statements was practically negligible in the extent to which they indicated unrelated drug activities. They were not therefore excludable as hearsay.

■ Appellant also claims the tapes were inadmissible because they contained references to other unrelated drug transactions. Generally, evidence of other criminal activity by a defendant is prejudicial and inadmissible. However, evidence of other unrelated criminal activity may be admissible to prove an accused's identification, knowledge, intent or motive, or to demonstrate a common plan or scheme of criminal activity from which the accused originated the charged crime. *Hobbs v. State* (1984), Ind., 466 N.E.2d 729. By showing common scheme or plan, the admissions of the other crimes committed by the defendant are supported by identification, intent, or state of mind of the defendant. *Mason v. State* (1984), Ind., 467 N.E. 2d 737.

The testimony about which appellant complains showed his intent and motive to

sell drugs and his common scheme of criminal activity. We find no error in the admission of the evidence.

■ Appellant further argues that the tapes were of such poor quality that they were unintelligible. He refers to portions of the transcripts which note "television noise" or "inaudible". He concludes that the jury could not have understood the contents of the tapes.

The trial court has wide discretion as to whether tapes are to be admitted. Taken as a whole, the tape must be of such clarity that it does not lead to jury speculation as to its contents. *Hobson v. State* (1984), Ind., 471 N.E.2d 281.

Upon reviewing the tapes, we agree with appellant that occasional static interrupted their conversations and the television is audible in the background. However, their voices and conversations were sufficiently clear, and the jury was not forced to speculate as to the content of the tapes. We find no abuse of trial court discretion.

■ Appellant contends the tapes should not have been admitted because their authenticity was not established. He claims the testimony did not show that the tapes accurately portrayed the conversations.

The record reveals that at trial police officers identified each tape on which the calls and drug buys were recorded, and they testified that they monitored and taped each conversation. They also gave testimony which established a proper chain of custody for each exhibit. There was sufficient evidence of the authenticity of the tapes to support their admission into evidence, and we find no error.

■ Appellant argues the trial court erroneously allowed the jury to read transcripts of the tapes because the State failed to establish a proper foundation for their admission.

We held in *Bryan v. State* (1983), Ind., 450 N.E.2d 53 that a transcript normally should be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents. Further, the trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection of a speaker's voice or inaccuracy in the transcript, and they should rely on what they hear rather than on what they read when there is a difference. *Id.* at 59.

Appellant asserts that no testimony was given to establish the accuracy of the transcripts. When appellant objected on these grounds, a police officer testified that the secretary of their unit transcribed the tapes. The State added that they were not requesting that the transcripts be admitted into evidence but that the tapes were the only evidence, and the transcripts were merely an aid to the jury.

The trial court admonished the jury that their determination should be based upon what they heard on the tapes and not what they read in the transcripts. The trial judge also stated that he had compared the tapes and the transcripts and though they would find some variances, he believed they were sufficient and could aid them in their review. The tapes were then played for the jury.

Whether the jury is furnished with transcripts to assist them in listening to the tapes is within the trial court's discretion. *Id.* Appellant identifies a single error in the transcript, in that it incorrectly identifies the speaker of a statement. Appellant concedes that the error is harmless but contends that because one mistake was made others must be present in the transcripts. He believes that because of the alleged errors and the fact that no one testified as to the accuracy of the transcripts, they should not have been admitted.

■ Appellant is correct that no testimony was given by the person who transcribed the tapes stating that the transcriptions were accurate. However, we find no reversible error. As in *Bryan*, appellant has not shown how a discrepancy between

the tape recordings and the transcripts prejudiced him. Evidence which is merely cumulative is not grounds for reversal. *Watkins v. State* (1984), Ind., 460 N.E.2d 514.

■ Appellant further argues error occurred when the trial judge stated that he had reviewed the transcripts and believed them to be accurate. Upon appellant's objection, the trial judge stated to the jury that it was their job to determine whether there were variances between the tapes and the transcripts. He stated he believed the transcripts were sufficient for their review, and he was going to allow them to use the transcripts as an aid while they listened to the tapes.

A judge has the duty to remain impartial and to refrain from making comments which might prejudice the jury. *Horne v. State* (1983), Ind., 445 N.E.2d 976. However, we do not believe the trial judge's comment amounted to prejudicial error. As noted above, the jury was admonished to make their determination based on the tapes and not the transcripts, and they were instructed that they were the exclusive judges of the evidence and the credibility of the witnesses. They were also instructed that it was their duty to determine the facts from the testimony and evidence given in their presence and that they should disregard any and all information they may derive from any other source. We do not believe appellant was denied a fair trial by the judge's comment about the transcripts.

■ Appellant contends the trial court erroneously denied his motion for mistrial after the State interjected an evidentiary harpoon into the testimony.

Appellant filed a motion *in limine* which prohibited the State from introducing into evidence any alleged acts of misconduct by him which had not been reduced to a conviction and which would otherwise be inadmissible. The motion specified that appellant requested that the jury not hear testimony of any prior drug transactions with Tolleson, and the motion was granted.

During a hearing before testimony began, the State requested permission to present a police officer's testimony about why the police department began its investigation of appellant and stated the evidence would not be admitted to prove appellant's prior misconduct.

At trial, a police officer testified that an investigation of appellant began because Tolleson told them that appellant was selling controlled substances. Appellant moved for a mistrial, and the trial court admonished the jury that the officer's testimony should be considered only as background information as to how the investigation started and had no relevancy to prove the defendant committed the crimes charged.

[11] The granting of a mistrial when evidence of past crimes is admitted lies within the trial court's discretion. This Court will reverse the trial court's determination only when it is shown the appellant was placed in a position of grave peril to which he should not have been subjected. *Criss v. State* (1987), Ind., 512 N.E.2d 858.

A motion *in limine* is not a final ruling on the admissibility of evidence, but it prevents the display of prejudicial material to the jury until the trial court has the opportunity to make an evidentiary ruling within the trial context. *Greene v. State* (1987), Ind., 515 N.E.2d 1376.

In appellant's case, the State specified that the evidence was admitted not to prove the truth of the matter contained therein, but was offered to show why police initiated an investigation of him. Testimony of a police officer which merely relates to an investigation of alleged crimes and establishes only that information was received within the officer's own knowledge is not objectionable hearsay. *Roberts v. State* (1978), 268 Ind. 348, 375 N.E.2d 215. We find no error in the denial of appellant's motion for mistrial.

Appellant alleges the chain of custody was not established prior to the admission into evidence of Exhibits 2, 3, and 7 which contained the drugs Tolleson gave police after each of the drug buys. Appellant asserts the State did not prove that once

Tolleson entered his house he in fact acquired the drugs from appellant. He states he alleges no error in the chain of custody of the drugs once the police received them.

Appellant also contends a pill bottle was erroneously admitted because the tie between the bottle and the charges against him was tenuous. The pills were admitted into evidence, and a police officer testified that he had no knowledge as to whether appellant had a valid prescription for the pills.

 Physical evidence need only constitute a small but legitimate link in the chain of evidence connecting the defendant with a crime. Any inconclusive connection to the defendant affects the exhibit's weight, not its admissibility. *Greene, supra.*

 Even if the admission of the pill bottle were improper, the amount of evidence establishing appellant's guilt is so substantial that any error would be harmless. *Gill v. State* (1984), Ind., 467 N.E.2d 724.

 Appellant argues it was reversible error to allow the State to amend the charging instrument during trial.

The original charge stated appellant sold "a Schedule III Controlled Substance: to wit, Codeine (brand name Fiorinal)."

At trial, the forensic chemist testified that Fiorinal is a Schedule III controlled substance which contains a combination of Butalbital, aspirin and caffeine, and the substance that appellant sold was Fiorinal. The State moved to amend the information to replace the word "Codeine" with "Butalbital" pursuant to Ind.Code § 35–34–1–5, and their motion was granted.

 Indiana Code § 35–34–1–5(a)(9) allows the amendment of an information of any immaterial defect which does not prejudice the substantial rights of the defendant. We have held that an information may not be amended to change the theory of the case or the identity of the offense charged. *Gibbs v. State* (1984), Ind., 460 N.E.2d 1217, interpreting former section 35–3.1–1–5(e). Appellant believes the

amendment was prejudicial and one of substance and not form.

 If the defense under the original information would be equally available after the amendment is made and the accused's evidence would be equally applicable to the information in one form as in the other, the amendment is one of form and not of substance. An amendment is of substance only if it is essential to the making of a valid charge of the crime. *Id.*

In appellant's case, he was well informed that he was charged with selling Fiorinal, a Schedule III substance. He has not shown that he was misled or that a viable defense became unavailable after the information was amended. We find appellant has not demonstrated substantial prejudice from the amendment. *Graves v. State* (1986), Ind., 496 N.E.2d 383.

 Appellant contends the trial court erred in excusing certain jurors for cause.

During *voir dire,* the trial court excused one prospective juror because he volunteered that he is "not too good about making decisions like this," and he wished to be excused. The record also shows that the trial court excused another prospective juror after she stated, "I'm (inaudible) just with past experience with teenagers." Appellant objected when the trial court excused these candidates for cause.

In appellant's brief, he argues an insufficient showing was made that these prospective jurors would be impartial or unfair, but he concedes that he cannot show prejudice by the trial court's actions.

 Before an appellant is entitled to a reversal, he must affirmatively show that there was error prejudicial to his substantial rights. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. We find no reversible error.

Appellant argues the trial court invaded the province of the jury when it gave its Instruction No. 14 on circumstantial evidence. The instruction was a rather lengthy statement by the court articulating the difference between direct and circumstantial evidence. The court's observations

in this regard were correct. Appellant claims the instruction was also a mandatory instruction. However, we find no mandatory language whatever in the instruction. We find no error in the giving of the court's Final Instruction No. 14.

■ Appellant argues the trial court failed to sufficiently articulate the facts which support the imposition of consecutive sentences. He also argues his sentence was manifestly unreasonable.

During sentencing, the trial court recognized certain mitigating factors such as the fact that appellant had been employed and had no history of violent criminal activity. The court stated that the aggravating factor which weighed heavily in the sentencing determination was the fact that appellant sold drugs which he had obtained with a prescription. He stated that the sentences should be served consecutively because of the nature and seriousness of the offense.

The nature of the crime and the manner in which it was committed are properly considered as aggravating circumstances. It is for the trial judge to determine the sentencing weight to be given to the aggravating or mitigating circumstances. *Hatchett v. State* (1987), Ind., 503 N.E.2d 398; *Rust v. State* (1985), Ind., 477 N.E.2d 262.

The trial court's findings were sufficient to support appellant's increased sentence. His sentence is authorized by statute and is not manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2.

THE TRIAL COURT IS AFFIRMED.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.